# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41868-2014

| | | |
|---|---|---|
| TRACFONE WIRELESS, INC., | ) | |
| | ) | Boise, May 2015 Term |
| Plaintiff/Appellant, | ) | |
| | ) | 2015 Opinion No. 60 |
| v. | ) | |
| | ) | Filed: June 23, 2015 |
| STATE OF IDAHO and the IDAHO EMERGENCY COMMUNICATIONS COMMISSION, | ) ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants/Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ADA COUNTY and the ADA COUNTY BOARD OF COMMISSIONERS, and IDAHO ASSOCIATION OF COUNTIES, INC., | ) ) ) ) | |
| | ) | |
| Intervenors/Respondents/Cross-appellants. | ) ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. Hon. Michael E. Wetherell, District Judge.

The judgment of the district court is affirmed.

Mitchell F. Brecher, Greenberg Tracrig LLP, Washington, D.C., argued for appellant.

Shasta J. Kilminster-Hadley, Deputy Attorney General, Boise, argued for respondents State of Idaho and Idaho Emergency Communications Commission.

Michael J. Kane, Michael Kane & Associates PLLC, Boise, argued for cross-appellant Idaho Association of Counties.

Sherry A. Morgan, Ada County Deputy Prosecutor, Boise, argued for the Ada County cross-appellants.

EISMANN, Justice.

This is an appeal out of Ada County from a declaratory judgment holding that TracFone is a telecommunication provider under Idaho Code section 31-4802(15)(d). We affirm that judgment.

## I.
## Factual Background.

TracFone Wireless, Inc., is a non-facilities-based commercial mobile radio service provider (a pure wireless reseller) that provides prepaid wireless telecommunications services. It desired to be designated as an eligible telecommunications carrier (ETC), which would permit TracFone to provide wireless telecommunications services to qualified low-income consumers and to receive money from the Universal Service Fund to subsidize such services. In 2004, TracFone filed a petition with the Federal Communications Commission asking that it forbear from the statutory requirement that an ETC must provide services, at least in part, over its own facilities. 47 U.S.C. § 214(e)(1)(A). By an order adopted on September 6, 2005, the Commission granted the forbearance, subject to specific conditions, including the requirement that TracFone "must have direct contact with the customer."

On March 1, 2010, TracFone filed a petition with the Idaho Public Utilities Commission (PUC) seeking designation as an ETC, pursuant to 47 U.S.C. § 214(e)(2). The PUC initially denied the petition on the ground that it would not serve the public interest because TracFone was not paying the fees required by the Idaho Telecommunications Service Assistance Program, I.C. §§ 56-901 to 56-905, and the Idaho Emergency Communications Act, I.C. §§ 31-4801 to 31-4819. TracFone filed an appeal to this Court, but while that appeal was pending the PUC staff and TracFone agreed to a settlement under which TracFone would pay the fee required by the Telecommunications Service Assistance Program and it would file a declaratory judgment action seeking a judicial determination of whether it was required to pay the fee required by the Emergency Communications Act. The PUC accepted the stipulation and issued an order approving it on May 18, 2012.

On June 4, 2012, TracFone filed this action against the State of Idaho and the Idaho Emergency Communications Commission (collectively "State") seeking a determination that TracFone was not required to remit the emergency communication fee (911 Fee) established by

2

Idaho Code section 31-4804. The State answered and filed a counterclaim seeking an order that TracFone remit the fees accrued over the prior nine years. Ada County and the Idaho Association of Counties, Inc., (collectively "Counties") intervened in this action, and they filed counterclaims seeking an order that TracFone remit all fees that should have been paid to all Idaho counties over the past nine years. The State moved for partial summary judgment seeking a declaration that TracFone is obligated to collect and remit the 911 Fee. Ada County and IAC joined in and adopted the State's motion.

Idaho Code section 31-4804(3) requires "telecommunications providers" to collect the 911 Fee and remit it to the applicable county treasurer's office. A telecommunications provider is defined as any person providing:

> (a) Exchange telephone service to a service address within this state; or
> (b) Any wireless carrier providing telecommunications service to any customer having a place of primary use within this state; or
> (c) Interconnected VoIP service to any customer having a place of primary use within this state; or
> (d) A provider of any other communications service that connects an individual having either a service address or a place of primary use within this state to an established public safety answering point by dialing 911.

I.C. § 31-4802(13) (2007).

The State argued that TracFone was a "wireless carrier providing telecommunications service to any customer having a place of primary use within this state" as defined in subsection (b) of Idaho Code section 31-4802(13). "Wireless carrier" was defined as "a cellular licensee, a personal communications service licensee, and certain specialized mobile radio providers designated as covered carriers by the federal communications commission in 47 CFR 20.18 and any successor to such rule." I.C. § 31-4802(15) (2007).

It is undisputed that TracFone is not a "cellular licensee" or a "personal communications service licensee." The State argued that it was a "specialized mobile radio provider" designated as a covered carrier in 47 C.F.R. § 20.18. TracFone countered that although it is a commercial mobile radio provider, it is not a "specialized" mobile radio provider. In response to that argument, the State argued in its reply brief that if TracFone was not included within subsection (b), it was included within subsection (d) of Idaho Code section 31-4802(13).

The district court held that TracFone was not included within subsection (b) because it was not a "specialized mobile radio provider," but it was included within subsection (d).

3

TracFone filed a motion for reconsideration, which the district court denied. The court entered a partial judgment merely stating, "It is hereby ordered that judgment is GRANTED in favor of defendants/counterclaimants as to the declaratory relief claims and counterclaims of the parties,"[1] and it certified that partial judgment as final pursuant to Idaho Rule of Civil Procedure 54(b). The judgment did not set forth any determination of the construction of any applicable statute or declare the rights, status, or other legal relations of the parties under any statute. TracFone appealed, and the Counties cross-appealed.

## II.
### Did the District Court Err in Holding that TracFone Was Not a "Wireless Carrier" as that Term is Used in Idaho Code Section 31-4802(13)(b)?

In their cross-appeal, the Counties challenge the district court's ruling that TracFone was not within the provisions of subsection (b) of Idaho Code section 31-4802(13). There is an obvious drafting error in that statute.

The Emergency Communications Act was enacted in 1988. Ch. 348, § 1, 1988 Idaho Sess. Laws 1027-1030. When enacted in 1988, Idaho Code section 31-4802 contained only one definition—"As used in this chapter 'consolidated emergency communications system' means facilities, equipment and dispatching services directly related to establishing, maintaining, or enhancing a county-wide 911 emergency communications service." Ch. 348, § 1, 1988 Idaho Sess. Laws 1027, 1027-28. The Act only imposed a fee on telephone line users. Ch. 348, § 1, 1988 Idaho Sess. Laws 1027, 1028. In 2003, Idaho Code section 31-4802 was amended to include a definition of "telecommunications provider," by adding the following:

> (10) "Telecommunications provider" means any person providing
> exchange telephone service to a service address within this state or any wireless

---

[1] The declaratory judgment does not comply with Rule 54(a) of the Idaho Rules of Civil Procedure because it does not state "the relief to which a party is entitled." I.R.C.P. 54(a). "A document does not constitute a judgment merely because it states who will prevail in the lawsuit." *Harrison v. Certain Underwriters at Lloyd's, London*, 149 Idaho 201, 205, 233 P.3d 132, 136 (2010). For example, a document merely stating that the defendant's motion for summary judgment was granted and that judgment will be entered against the plaintiff does not comply with Rule 54(a). *Spokane Structures, Inc. v. Equitable Invs., LLC*, 148 Idaho 616, 619, 226 P.3d 1263, 1266 (2010). Because many trial judges were failing to comply with Rule 54(a), on February 12, 2015, this Court issued an order stating that "any judgment, decree or order entered before April 15, 2015, that was intended to be final but which did not comply with Idaho Rule of Civil Procedure 54(a) . . . shall be treated as a final judgment." The judgment in this case was entered on March 19, 2014, before that deadline. Therefore, the partial judgment in this case is treated as a judgment.

4

carrier providing telecommunications service to any customer having a place of primary use within this state.

> (11) "Wireless carrier" means a cellular licensee, a personal communications service licensee, and certain specialized mobile radio providers designated as covered carriers by the federal communications commission in 47 CFR 20.18 and any successor to such rule.

Ch. 290, § 2, 2003 Idaho Sess. Laws 784, 787.

The original definition of telecommunications provider defined only two categories: "any person providing exchange telephone service to a service address within this state" and "any wireless carrier providing telecommunications service to any customer having a place of primary use within this state." *Id.* In 2007, the legislature amended the definition to add two more categories, but in doing so it made an obvious drafting error.

The legislature intended to list four categories of telecommunications providers. However, in drafting the first two categories the legislature simply used wording from what had been Idaho Code section 31-4802(10) and renumbered that subsection as (13), so that the statute provided:

> (13) "Telecommunications provider" means any person providing:
> (a) Exchange telephone service to a service address within this state; or
> (b) Any wireless carrier providing telecommunications service to any customer having a place of primary use within this state; or
> (c) Interconnected VoIP service to any customer having a place of primary use within this state; or
> (d) A provider of any other communications service that connects an individual having either a service address or a place of primary use within this state to an established public safety answering point by dialing 911.

I.C. § 31-4802(13).

When amending the statute, the legislature made an obvious clerical error. In the 2003 statute, the first category began with the words "any person providing," but the second category began with the words "any wireless carrier providing." The legislature took the words "any person providing" from the first category and made them the lead-in that was applicable to all four categories, but did not change the wording of the second category to fit that lead-in. As a result, the first two categories after the 2007 amendment were:

> "Telecommunications provider" means any person providing:
> (a) Exchange telephone service to a service address within this state; or
> (b) Any wireless carrier providing telecommunications service to any customer having a place of primary use within this state;

*Id*. Read literally, it would not make sense to state that a telecommunications provider was "any person providing . . . [a]ny wireless carrier providing telecommunications service." It would have been more accurate to draft the legislation so that it stated: " 'Telecommunications provider' means:" and have the words "Any person providing" begin subsection (a).

In the 2007 amendment, the legislature also made a similar error in drafting subsection (d) of the statute. It begins with the words "A provider of" so that read literally it would state that a " 'Telecommunications provider' means any person providing . . . [a] provider of other telecommunications service . . . ." It would apply to a person who provides a provider rather than to a person who provides a service.

During oral argument on appeal, TracFone agreed that the intended meanings of subsections (b) and (d) are obvious in spite of these drafting errors. "Obvious clerical errors or misprints in the statute will be corrected or words read into a statute or omitted therefrom if the error is plainly indicated and the true meaning is obvious, in order to make the statute express the legislative intent." *State v. Witzel*, 79 Idaho 211, 217, 312 P.2d 1044, 1048 (1957).

To be within subsection (b) of Idaho Code section 31-4802(13), TracFone would have to be a "wireless carrier providing telecommunications service to any customer having a place of primary use within this state." If those words were given their generic meaning when used with respect to telecommunications carrriers, they would apply to TracFone. It is a wireless carrier. As testified by TracFone's Director of Government Relations, "TracFone is also the fifth largest wireless carrier and largest mobile network operator in the United States in terms of total customer counts." TracFone also provides telecommunications service to customers having a place of primary use within this state. However, the words "wireless carrier" in subsection (b) have a statutory definition that differs from the generic meaning of those words.

The statutory definition of "wireless carrier" is "a cellular licensee, a personal communications service licensee, and certain specialized mobile radio providers designated as covered carriers by the federal communications commission in 47 CFR 20.18 and any successor to such rule." I.C. § 31-4802(15).[2] It is undisputed that TracFone is not a cellular licensee and is not a personal communications service licensee. Therefore, to be a wireless carrier within

---

[2] The 2007 amendment to the statute renumbered 31-4802(13) to 31-4802(15). Ch. 340, § 2, 2007 Idaho Sess. Laws 995, 997.

subsection (b), it must be a "specialized mobile radio provider[] designated as [a] covered carrier[] by the federal communications commission in 47 CFR 20.18 and any successor to such rule."

The district court held that "specialized mobile radio providers" was a technical term which the legislature intended to be defined consistently with Federal Communication Commission (FCC) regulations pertaining to telecommunications carriers and 911 service. The court held that the definition in 47 CFR § 90.7 should apply, which defines a "special mobile radio system" as a "radio system in which licensees provide land mobile communications services (other than radiolocation services) in the 800 MHz and 900 MHz bands on a commercial basis to entities eligible to be licensed under this part, Federal Government entities, and individuals." 47 C.F.R. § 90.7. Because TracFone did not fit the definition of a "special mobile radio system," the court held that it was not a wireless carrier as that term is used in Idaho Code section 31-4802(13)(b).

The Counties contend that the court erred because the words should be given a generic meaning. They argue that "certain specialized mobile radio providers designated as covered carriers by the federal communications commission in 47 CFR 20.18 and any successor to such rule" should simply be read to mean "those mobile radio providers identified by the FCC in 47 C.F.R. § 20.18." The Counties would simply delete the word "specialized" from the statute in order to make it fit their chosen definition. Idaho Code section 31-4802(15) also defines "wireless carrier" as "*certain* specialized mobile radio providers" (emphasis added), which would indicate that the legislature was not including *all* specialized mobile radio providers, but the Counties do not address that limitation.

The Counties argue that the district court erred in holding that the phrase "certain specialized mobile radio providers" in Idaho Code section 31-4802(15) was a technical term and that by so holding "the District Court would have had no choice but to assume that the Legislature violated its constitutional directive that 'every act or joint resolution shall be plainly worded, avoiding as far as practicable the use of technical terms,' " which is set forth in Article III, § 17, of the Constitution of the State of Idaho. The Counties did not challenge the statute as being unconstitutional.

The constitutional provision does not ban the use of technical terms. It states that every act or joint resolution shall "avoid[] *as far as practicable* the use of technical terms." Idaho

7

Const. art. III, § 17 (emphasis added). It would not be practicable to enact legislation dealing with technology without using technical terms. In this instance, the technical term is defined by reference to 47 C.F.R. § 20.18. Construing it as written does not violate the constitutional provision.

Idaho Code section 31-4802(15) as written is unambiguous. "If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *City of Pocatello v. Idaho*, 152 Idaho 830, 838-39, 275 P.3d 845, 853-54 (2012). The statute states, " 'Wireless carrier' means . . . certain specialized mobile radio providers designated as covered carriers by the federal communications commission in 47 CFR 20.18 and any successor to such rule." I.C. § 31-4802(15). When the statute was enacted in 2003, 47 C.F.R. § 20.18 began:

> (a) *Scope of section.* The following requirements are only applicable to Broadband Personal Communications Services (part 24, subpart E of this chapter), Cellular Radio Telephone Service (part 22, subpart H of this chapter), and Geographic Area Specialized Mobile Radio Services and Incumbent Wide Area SMR Licensees in the 800 MHz and 900 MHz bands (included in part 90, subpart S of this chapter). In addition, service providers in these enumerated services are subject to the following requirements solely to the extent that they offer real-time, two way switched voice service that is interconnected with the public switched network and utilize an in-network switching facility which enables the provider to reuse frequencies and accomplish seamless hand-offs of subscriber calls.

47 C.F.R. § 20.18(a) (2003).

In 2003, 47 CFR § 20.18 was applicable to "Geographic Area Specialized Mobile Radio Services . . . in the 800 MHz and 900 MHz bands (included in part 90, subpart S of this chapter)." Part 90 was titled "PRIVATE LAND MOBILE RADIO SERVICES." The definitions section in Part 90 defined "Specialized Mobile Radio system" as "[a] radio system in which *licensees provide land mobile communications services* (other than radiolocation services) in the 800 MHz and 900 MHz bands on a commercial basis to entities eligible to be licensed under this part, Federal Government entities, and individuals." 47 C.F.R. § 90.7 (2003) (emphasis added). Because TracFone is not licensed by the FCC, it cannot be a licensee that provides land mobile communications services included in Part 90, subpart S.

The Counties argue that this definition cannot apply to TracFone because it defines a "Specialized Mobile Radio system," not "specialized mobile radio providers," which is the term used in Idaho Code section 31-4802(15). That argument is nonsensical. By definition, a

8

"specialized mobile radio system" is a "radio system in which licensees *provide* land mobile communications services." (Emphasis added.) The licensees using the specialized mobile radio system to provide land mobile communications services are obviously specialized mobile radio system providers.

The Counties also argue that the definition in 47 C.F.R. § 90.7 is "an un-referenced definition" that was taken out of context. As shown above, the 2003 version of 47 C.F.R. § 20.18 was applicable to "Geographic Area Specialized Mobile Radio Services . . . in the 800 MHz and 900 MHz bands (included in *part 90*, subpart S of this chapter)." (Emphasis added.) Part 90 was specifically referenced in the regulation, and 47 C.F.R. § 90.7 is included in Part 90.

In addition, 47 C.F.R. § 20.18 stated that it applied to "Geographic Area Specialized Mobile Radio Services . . . in the 800 MHz and 900 MHz bands (included in part 90, subpart S of this chapter)." 47 C.F.R. § 20.18 (2003). Subpart S of Part 90 was titled "Regulations Governing Licensing and Use of Frequencies in the 806–824, 851–869, 896–901, and 935–940 MHz Bands." Subpart S governed "the licensing and operations of all systems operating in the 806–824/851–869 MHz and 896–901/935–940 MHz bands." 47 C.F.R. § 90.601 (2003). Those eligible for licensing under these frequencies included "[a]ny person eligible under this part and proposing to provide on a commercial basis base station an [sic] ancillary facilities as a *Specialized Mobile Radio Service System operator*, for the use of individuals, federal government agencies and persons eligible for licensing under subparts B or C of this part." 47 C.F.R. § 90.603(c) (2003) (emphasis added). Subpart B of Part 90 dealt with the Public Safety Radio Pool, and Subpart C of Part 90 dealt with the Industrial/Business Radio Pool. 47 C.F.R. §§ 90.15, 90.31 (2003). Subparts D and E were reserved.

In 2007, the FCC changed the wording of 47 C.F.R. § 20.18. As rewritten, subsection (a) stated:

> (a) *Scope of section.* The following requirements are only applicable to CMRS [commercial mobile radio service] providers, excluding mobile satellite service (MSS) operators, to the extent that they:
> > (1) Offer real-time, two way switched voice service that is interconnected with the public switched network; and
> > (2) Utilize an in-network switching facility that enables the provider to reuse frequencies and accomplish seamless hand-offs of subscriber calls.
> These requirements are applicable to entities that offer voice service to consumers by purchasing airtime or capacity at wholesale rates from CMRS licensees.

47 C.F.R. § 20.18(a) (2007).

The definition of "wireless carrier" is "a cellular licensee, a personal communications service licensee, and certain specialized mobile radio providers designated as covered carriers by the federal communications commission in 47 CFR 20.18 and *any successor to such rule*." I.C. § 31-4802(15) (emphasis added). The Counties argue that the amended version of 47 C.F.R. § 20.18 now applies as the successor to the rule in effect when section 31-4802(15) was enacted; that the current version of 47 C.F.R. § 20.18 applies to commercial mobile radio service providers; and that it therefore applies to TracFone because it is undisputed that TracFone is a commercial mobile radio service provider. That argument is incorrect.

Idaho Code section 31-4802(15) does not state that wireless carrier means any "mobile radio providers designated as covered carriers by the federal communications commission in 47 CFR 20.18 and any successor to such rule." The code section states that it means "*specialized* mobile radio providers designated as covered carriers by the Federal Communications Commission in 47 CFR 20.18 and any successor to such rule." (Emphasis added).

As amended in 2007, 47 C.F.R. § 20.18 applied to commercial mobile radio service providers. The term "commercial mobile radio service" was defined in 47 C.F.R. § 20.9(a). That regulation defined fourteen categories of mobile services that were "treated as common carriage services and regulated as commercial mobile radio services." 47 C.F.R. § 20.9(a) (2007). One of the defined mobile services was "Specialized Mobile Radio services that provide interconnected service (part 90 of this chapter)." 47 C.F.R. § 20.9(a)(4) (2007). Part 90 of the chapter was titled "PRIVATE LAND MOBILE RADIO SERVICES," and section 90.7 in Part 90 defined "Specialized Mobile Radio system" as a "radio system in which licensees provide land mobile communications services (other than radiolocation services) in the 800 MHz and 900 MHz bands on a commercial basis to entities eligible to be licensed under this part, Federal Government entities, and individuals." 47 C.F.R. § 90.7 (2007). Thus, the 2007 amendment to 47 C.F.R. § 20.18 did not change the definition of "specialized mobile radio providers," and the definition has not changed since then. 47 C.F.R. §§ 20.18, 20.9, 90.7 (2014).

TracFone's Vice President of Engineering stated in his affidavit: "TracFone does not operate a Specialized Mobile Radio ('SMR') system. Neither does TracFone resell SMR services of any licensed Specialized Mobile Radio System operator." That testimony was unrefuted. The district court did not err in holding that TracFone was not a specialized mobile

radio provider designated as a covered carrier by the Federal Communications Commission in 47 C.F.R. § 20.18.  Because TracFone is not a "specialized mobile radio provider[]," it is not a "wireless carrier" as that term is used in Idaho Code section 31-4802(15).

### III.
### Did the District Court Err in Holding that TracFone Was a Provider of "Any Other Communications Service" as that Term is Used in Idaho Code Section 31-4802(13)(d)?

After concluding that TracFone was not included within the categories of "telecommunications provider" set forth in subsections (a) through (c) of Idaho Code section 31-4802, it held that TracFone was a provider of "any other communications service" as that term is used in Idaho Code section 31-4802(13)(d).  TracFone contends that the district court erred because the subsections of Idaho Code section 31-4802 should define telecommunications providers based upon the technology they use to provide service.  The statute states:

> "Telecommunications provider" means any person providing:
> (a)  Exchange telephone service to a service address within this state; or
> (b)  Any wireless carrier providing telecommunications service to any customer having a place of primary use within this state; or
> (c)  Interconnected VoIP service to any customer having a place of primary use within this state; or
> (d)  A provider of any other communications service that connects an individual having either a service address or a place of primary use within this state to an established public safety answering point by dialing 911.

I.C. § 31-4802(13) (2007).

According to TracFone, subsection (a) applies to exchange telephone service, subsection (b) applies to wireless service, subsection (c) applies to voice-over-internet service, and the reference to the "provider of any other communications service" in subsection (d) must therefore apply to a service that does not use any of the technologies in subsections (a) through (c). TracFone asserts:

> As the Legislature clearly defined "telecommunications provider" according to the types of services *provided by* such a person/entity *(e.g.,* "wireless telecommunications service"), there can be no dispute that the type of *service* that TracFone offers is not encompassed by subsection (d), but rather falls squarely and unambiguously within the ambit of subsection (b).

TracFone argues, "Reading the statute as a whole, it is evident that the Legislature wrote the statute to address wireless telecommunications service within subsection (b), and to address

11

any other types of service by way of subsections (a), (c) and (d)." Thus, in its appeal TracFone argues that because subsection (b) deals with wireless carriers, which TracFone is, it cannot be an "other communication service" in subsection (d), but in responding to the Counties' cross-appeal, TracFone contends that it is not included in subsection (b) because it is not a "wireless carrier" as that term is defined by Idaho Code section 31-4802(15). TracFone cannot simultaneously be both within and not within the term "wireless carrier" as it is used in subsection (b). It wants to use the generic definition of "wireless carrier" to argue on appeal that it is a "wireless carrier" in subsection (b), but it wants to use the statutory definition of "wireless carrier" to defend against the cross-appeal by arguing that it is not within subsection (b).

Subsection (b) applies to "[a]ny wireless carrier providing telecommunications service." As addressed above, TracFone is not a "wireless carrier" as that term is defined by Idaho Code section 31-4802(15), and for that reason it cannot be a "wireless carrier providing telecommunications service" under subsection (b). It admittedly does not provide "[e]xchange telephone service" under subsection (a), nor does it provide "[i]nterconnected VoIP service" [voice over internet protocol service] under subsection (c). Therefore, it comes within subsection (d), which applies to a "provider of any other communications service that connects an individual having either a service address or a place of primary use within this state to an established public safety answering point by dialing 911." It is undisputed that TracFone provides communications service that connects an individual having either a service address or a place of primary use within this state to an established public safety answering point by dialing 911.

TracFone posits the question, "[I]f subsection (d) was intended to be, as the District Court determined, a 'catch-all' definition - why did the Legislature spend any time or energy delineating the specific language set forth in subsections (a), (b) and (c), and in § 31-4802(15)?" More appropriately however, the question is, If TracFone is not included within subsections (a), (b), and (c), why is it not a "provider of any other communications service" under subsection (d)?

TracFone would have subsection (d) apply only to providers of communications service that do not use the same technology as providers in subsections (a), (b), and (c). It asserts that the only logical interpretation of subsection (d) is that "the Legislature intended to proactively address the prospect of evolving technology that does not utilize the landline, radio, or internet

12

services that are addressed in I.C. § 31-4802(13)(a)-(c)." However, it cannot point to any language in subsection (d) that contains that limitation. Subsection (d) does not state, "A provider of any communications service using any other technology . . . ." It states, "A provider of any *other* communications service," and it is clear that TracFone provides a communication service other than the services included within subsections (a), (b), and (c).

TracFone submitted a collection of minutes of meetings of the Idaho Emergency Communications Commission in order to show that Idaho Code section 31-4802(13) was ambiguous. The district court granted the State's motion to strike those minutes, which TracFone contends was error. TracFone does not contend that the Commission ever adopted any formal opinion as to whether TracFone was required to remit 911 Fees. It contends that the minutes show that reasonable minds could conclude that TracFone was not required to do so. The minutes begin in August 2004 and continue through July 2012. Obviously, the minutes before 2007 do not reflect any discussion of the 2007 amendment to Idaho Code section 31-4802(13), and the minutes thereafter do not reflect any discussion of the meaning of that amendment. Rather, there is discussion on how to collect 911 Fees from prepaid wireless providers.

The district court was correct in holding that the minutes are irrelevant. Other than the drafting errors mentioned above (which TracFone admits do not create confusion as to the statute's meaning), Idaho Code section 31-4802(13) is unambiguous. "We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature." *City of Sun Valley v. Sun Valley Co*., 123 Idaho 665, 667, 851 P.2d 961, 963 (1993).

TracFone also argues that the 2013 legislation shows that the legislature did not previously intend that the 911 Fee be collected in connection with prepaid wireless telecommunications service. The 911 Fee set forth in Idaho Code section 31-4804(1) is a monthly fee not to exceed $1.00 per month. I.C. § 31-4804(1). The minutes of the Idaho Emergency Communications Commission show that collection of that fee with respect to prepaid communications services was problematic for the Commission. In 2003, the legislature enacted Idaho Code section 31-4813, which provided that the 911 Fee did not apply to prepaid calling cards. Ch. 290, § 9, 2003 Idaho Sess. Laws 784, 791. In 2007, the legislature amended the statute by adding a sentence stating, "Prepaid wireline, wireless and VoIP phones with a service

address or place of primary use within Idaho are not considered prepaid calling cards." Ch. 340, § 4, 2007 Idaho Sess. Laws 995, 999. In 2013, the legislature amended the statute to establish a prepaid wireless fee in the amount of 2.5% of the sales price of each purchase of prepaid wireless telecommunications service by a consumer. Ch. 224, § 2, 2013 Idaho Sess. Laws 525, 526. With that amendment, the 911 Fee for prepaid wireless telecommunications service would be paid at the time the service was purchased. TracFone contends that this legislation shows that the legislature did not previously intend for prepaid wireless carriers to collect the 911 Fee.

The action of the 2013 legislature has no bearing on the intent of the 2007 legislature when it amended the definition of "telecommunications provider" and, as stated above, other than the admitted drafting errors which have no bearing on the meaning of the statute, Idaho Code section 31-4802(13) is unambiguous. Unless it amends the statute at issue, subsequent legislation cannot make an unambiguous statute ambiguous. The 2013 legislation did not amend Idaho Code section 31-4802(13).

## IV.
### Did the District Court Err in Failing to Strike Affidavits Filed by TracFone?

In their cross-appeal, the Counties contend that the district court erred in failing to strike affidavits filed by TracFone. The State filed a motion for partial summary judgment, seeking a declaratory judgment that "TracFone Wireless, Inc. is obligated to collect and remit the 911 Fee pursuant to [the] Idaho Emergency Communications Act." In opposition to that motion, TracFone filed the affidavit of Carolyn M. Baldino, who reported her search of the FCC website to show that TracFone was not licensed as a specialized mobile radio provider. Ada County moved to strike the affidavit, but the district court denied that motion. In its memorandum decision, the district court granted the State's motion, finding that "Section 31-4802(13)(d) applies to Tracfone [sic], making it a 'telecommunications provider' and thus subject to the Act's fee-collection duty." We have upheld that determination by the district court. Therefore, whether the court erred in denying Ada County's motion to strike the affidavit is moot.

After the district court entered its memorandum decision finding that TracFone was a telecommunications provider pursuant to Idaho Code section 31-4802(13)(d), TracFone moved for reconsideration of that finding. In support of its motion, it filed the affidavits of Thomas J. Lloyd and Leighton W. Lang. Mr. Lloyd's affidavit presented the meeting minutes of the Idaho

14

Emergency Communications Commission discussed above, and Mr. Lang's affidavit presented a pamphlet on 911 funding and oversight from the National 911 Program, which is housed within the Office of Emergency Medical Services at the National Highway Traffic Safety Administration, United States Department of Transportation. Ada County objected to statements in and attachments to the affidavits, and the district court granted the objections.

After the district court denied its motion for reconsideration, TracFone filed a motion asking the district court to enter a partial judgment certified as final pursuant to Rule 54(c) of the Idaho Rules of Civil Procedure, and it resubmitted those affidavits in connection with that motion. Ada County again objected to the affidavits, but the court did not strike them. The Counties contend on appeal that the court abused its discretion in admitting previously stricken affidavits.

The affidavits were initially offered in support of TracFone's motion for reconsideration of the court's determination that it would grant the State's summary judgment motion. Affidavits submitted in connection with a motion to reconsider a court's ruling on a motion for summary judgment must comply with Rule 56(e) of the Idaho Rules of Civil Procedure. *Kepler-Fleenor v. Fremont County*, 152 Idaho 207, 211-12, 268 P.3d 1159, 1163-64 (2012) (the trial court did not err in striking an affidavit submitted in support of a motion to reconsider the grant of summary judgment where the statements in the affidavit were inadmissible parol evidence); *Shane v. Blair*, 139 Idaho 126, 130, 75 P.3d 180, 184 (2003) (the trial court erred in striking affidavits submitted in support of a motion to reconsider the grant of summary judgment where the affidavits demonstrated sufficient personal knowledge to provide adequate foundation for their admissibility under Rule 56(e)). The requirements of Rule 56(e) do not automatically apply to affidavits submitted in connection with every motion filed in a civil action. *Obendorf v. Terra Hug Spray Co., Inc.*, 145 Idaho 892, 900-01, 188 P.3d 834, 842-43 (2008) (an affidavit filed in connection with a motion for a new trial need not be admissible under the Idaho Rules of Evidence). There is no reason why an affidavit submitted in connection with a motion asking the court to enter a partial judgment certified as final under Rule 54(a) should comply with the rules of evidence. The trial court can determine the weight to give such affidavit. Therefore, the district court did not err in refusing to strike the affidavits when they were offered in connection with TracFone's motion asking that the court enter a partial judgment and certify it as final.

## V.
## Is Any Party Entitled to an Award of Attorney Fees on Appeal?

TracFone seeks an award of attorney fees on its appeal pursuant to Idaho Code section 12-117 against Ada County, the Idaho Association of Counties, and the Idaho Emergency Communications Commission. Because TracFone did not prevail on its appeal, it is not entitled to an award of attorney fees. *Telford v. Smith County, Texas*, 155 Idaho 497, 504, 314 P.3d 179, 186 (2013).

The State of Idaho and the Idaho Emergency Communications Commission seek an award of attorney fees in defending against TracFone's appeal pursuant to Idaho Code section 12-117. That statute applies "in any proceeding involving as adverse parties a state agency or a political subdivision and a person." I.C. § 12-117(1). The State of Idaho is neither a state agency nor a political subdivision. A state agency, as used in the statute, includes a "commission . . . authorized by law to make rules or to determine contested cases." I.C. §§ 12-117(5)(d), 67-5201(2). The Idaho Emergency Communications Commission did not present any argument contending that it met that definition. Therefore, neither of them is entitled to an award of attorney fees for defending against TracFone's appeal.

Ada County and the Idaho Association of Counties seek an award of attorney fees pursuant to Idaho Code sections 12-121 and 12-123 in defending against TracFone's appeal. "Section 12–123 does not apply on appeal to this Court." *Bird v. Bidwell*, 147 Idaho 350, 353, 209 P.3d 647, 650 (2009). TracFone seeks an award of attorney fees pursuant to Idaho Code section 12-117 for defending against the cross-appeals of Ada County and the Idaho Association of Counties. That statute would not apply to the Idaho Association of Counties because it is neither a state agency nor a political subdivision. Idaho Code section 12-117 does apply to Ada County because it is a political subdivision. I.C. § 12-117(5)(b). Because Ada County and Idaho Association of Counties prevailed in TracFone's appeal and TracFone prevailed in the cross-appeal of Ada County and Idaho Association of Counties, we do not award any of these parties attorney fees on appeal under Idaho Code section 12-121.

## VI.
## Conclusion.

16

The district court's judgment simply stated who prevailed.  In its memorandum decision, the court stated, "Section 31-4802(13)(d) applies to Tracfone [sic], making it a 'telecommunications provider' and thus subject to the Act's fee-collection duty."  Assuming that was its intended declaratory judgment, we affirm the judgment on appeal.  We award the State and the Idaho Emergency Communications Commission costs on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**